THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF MASSACHUSETTS

Civil Action No. 03 12470 MLW

ROBERT MUIR, *Plaintiff*

Vs.

CITY OF ATTLEBORO, THE ATTLEBORO
POLICE DEPARTMENT, CHIEF RICHARD PIERCE,
in his official and individual capacities, LT. GEORGE
BUSSIERE, in his official and individual capacity,
OFFICER MICHAEL MCDONNELL, in his official and
individual capacity, OFFICER THOMAS WELLMAN,
in his official and individual capacity, *Defendants*

PLAINTIFF'S MEMORANDUM IN SUPPORT
OF PLAINTIFF'S OPPOSITION TO DEFENDANTS'
SPECIAL MOTION TO DISMISS UNDER M.G.L. Ch. 231, §59H

I. INTRODUCTION

Plaintiff filed this case on December 8, 2003, against defendants, the City of Attleboro, the Attleboro Police Department ("APD") and four individual APD employees (in both their official and individual capacities) for malicious prosecution, abuse of process and six other state and federal claims. Plaintiff's claims arise out of defendants' application for a criminal complaint issued on or about January 13, 2003, charging plaintiff with assault and battery. The victim of plaintiff's alleged assault and battery was Michael McDonnell II (defendant APD Officer Michael McDonnell's son).

February 13, 2004, defendants filed a Special Motion to Dismiss counts I through VII of Plaintiff's complaint under M.G.L. c. 231 §59H, the Massachusetts Anti-SLAPP

statute. Defendants' also filed an Answer to plaintiff's complaint for count VIII. Plaintiff now files his Opposition to defendants Special Motion to Dismiss.

In their Motion, defendants claim that their "petitioning activities" on behalf of the government in issuing an application for a criminal complaint are protected by §59H and that plaintiff's state law claims are based solely on defendants' petitioning activities. Defendants also assert that plaintiff cannot show that defendants' activities are "devoid of any reasonable factual support or any arguable basis in the law." Additionally, defendants claim that the Massachusetts anti-SLAPP statute, a state procedural rule, is applicable in federal court. As plaintiff demonstrates below, defendants' claims are misinformed and without legal basis.

## II. FACTUAL BACKGROUND

Michael McDonnell II was a student at the Brennan Middle School in Attleboro, Massachusetts in January 2003. Plaintiff, Mr. Robert Muir, taught 4th grade at the Studley Elementary School in Attleboro during January 2003. On January 6, 2003, Studley School Principal Sylvia Day walked into plaintiff's classroom while he was reading to his students and inquired about a fight outside of his room. (Affidavit of Robert Muir, Paragraph 2). Plaintiff volunteered to investigate and spotted a large group of children (between 25-30) in the wooded area on a path that ran between Brennan and Studley Schools. (Id., Paragraphs 3,4). As plaintiff approached, many of the children scattered. Plaintiff then spotted one boy (later identified as Michael McDonnell II) sitting on top of another boy punching him repeatedly (later identified as Patrick Marshall). (Id., Paragraph 4). Despite plaintiff's presence, Michael McDonnell II continued to struggle and punch Patrick Marshall on the ground. As plaintiff attempted to separate the

2

children, Michael McDonnell II refused to stop fighting with Patrick Marshall. (Id., Paragraph 5). When plaintiff stood Michael McDonnell II up, he continued to struggle with plaintiff in such a manner that plaintiff thought he was going to hit him. (Id., Paragraph 6). In order to prevent any further harm to Patrick Marshall and to safeguard himself, plaintiff applied a "hold" on Michael McDonnell II in that he put his arm behind his back and walked him to his classroom where Principal Day awaited. While being escorted to the school, Michael McDonnell II steadfastly resisted and flailed his freed arm, telling plaintiff to let him go and that his father was a police officer. (Id., Paragraphs 6,7,). Plaintiff informed Michael McDonnell II that he was not going to let him go and that he was a retired police officer.[1] As Michael McDonnell II continued his attempts to break free, he twisted his body around so that his arm became outstretched as he and plaintiff approached the school. Plaintiff brought Michael McDonnell II to Principal Day who informed him that he needed to go with her and that she would escort him to the nurse's office. Principal Day told the boy he needed to calm down and that he could not hit her. (Affidavit of Sylvia Day, Paragraph 10). Principal Day then took Michael McDonnell II from plaintiff's hold and applied a "hold" of her own, grasping the boy by his right upper arm with her right hand, using her left arm around his back. (Id. Paragraph 11). As Principal Day talked with Michael McDonnell II on their way to the nurse's office, Michael McDonnell II told her that his father was a policeman and that he was going "to get that man" (referring to plaintiff) and that his father would not like him touching and twisting his arm. (Id., Paragraph 11). While at the nurse's office, Michael McDonnell II was observed to be very agitated and angry. He never indicated that his

---

[1] Robert Muir is a retired police officer formerly with the Providence Police Department in Providence, Rhode Island. Plaintiff served with the Providence Police for 20 years.

3

arm was hurt, but repeated several times that his father was a policeman and that "he would pay" (referring to plaintiff). (Affidavit of Debra Maynard, Paragraph 4,5). Plaintiff then went back outside and escorted Patrick Marshall to his classroom and on to the nurse's office. (Affidavit of Robert Muir, Paragraph 11).

At approximately 3:00 p.m. on January 6, 2003, plaintiff left Principal Day's office and spotted a man (later identified as Jason McDonnell) outside the principal's office. Jason McDonnell approached plaintiff and asked him his name. Plaintiff responded, "Who wants to know?" Jason McDonnell informed plaintiff that he was Michael McDonnell II's older brother and that his father wanted his name and asked if he put his brother in a "chicken wing." Plaintiff told Jason McDonnell that he did put his brother's arm behind his back and gave him his name. Plaintiff also asked Jason McDonnell to have his father call him to talk about the incident. (Id., Paragraph 12). Shortly thereafter, plaintiff received a telephone call from APD Officer McDonnell. Plaintiff invited Officer McDonnell to come to school and discuss the incident. Officer McDonnell responded that he, "intended to send the cops instead." (Id., Paragraph 13).

At approximately 4:00 p.m. on January 6, 2003, defendant APD Officer Thomas Wellman arrived at the Studley School and met with plaintiff and Principal Sylvia Day together. At this meeting, plaintiff confirmed that he used the hold he was trained in as a veteran police officer to pull Michael McDonnell II off the other student he was hitting and to get him away from the situation. (Affidavit of Sylvia Day, Paragraph 15). Plaintiff asked Officer Wellman what would happen next. Officer Wellman informed plaintiff that he was not going to write a report but that Mr. McDonnell could go to the Court on his own and swear out a complaint of assault. Officer Wellman did not make copious notes

4

of plaintiff's statement and/or account of the situation at the time of this meeting. (Id., Paragraph 16). Plaintiff did not speak to Officer McDonnell, Captain George Bussiere (then Lieutenant Bussiere), or any member of the Attleboro Police Department until the hearing before the Magistrate on May 5, 2003. (Affidavit of Robert Muir, Paragraph 15).

On January 13, 2003, defendants issued an application for a criminal complaint charging plaintiff with one count of assault and battery (M.G.L. c. 265-13A) upon Michael McDonnell II. Also on January 13, 2003, Officer McDonnell sent Principal Sylvia Day, Ronald Pacy (Superintendent of Schools), and James Hanley from the Massachusetts Department of Education (DOE) a request that the matter be investigated and that the appropriate action be taken against plaintiff.

A show cause hearing on the application for complaint was scheduled before a Magistrate in the Attleboro District Court on March 17, 2003. The matter was continued to May 5, 2003. Meanwhile, on April 4, 2003, Officer McDonnell received the results of the DOE's investigation. The DOE concluded plaintiff did not use any unreasonable physical restraint on his son, that plaintiff did not use a restraint that lasted longer than 5 minutes nor did it result in any injury requiring medical attention. Further, plaintiff had not violated any education law, regulation or policy with regard to the restraint applied upon Michael McDonnell II. "Indeed, the restraint was used because the teacher believed that the student might hurt himself or others so believed it best to break up the fight as needed." (Exhibit A, DOE report to Officer McDonnell, Paragraph 2). Officer McDonnell failed to report this exculpatory evidence to Officer Wellman, or any other member of the APD.

On May 5, 2004, plaintiff appeared before the Magistrate in the Attleboro District Court. The Magistrate denied the defendants' complaint citing insufficient evidence having been presented. (Exhibit B, Denial of Application for Complaint).

Plaintiff claims that defendants' investigation was negligent and not conducted in good faith. Further, defendants acted without probable cause in issuing the application for complaint. Plaintiff also asserts that defendants did not act with an interest of seeking justice, but with an interest in harassing, annoying, humiliating, embarrassing and injuring him.

### III. STANDARD OF REVIEW

Because of the purpose of the statute, a movant who asserts protection for its petitioning activities under the Massachusetts anti-SLAPP statute must make a threshold showing through pleadings and affidavits that the claim against it are "based on" petitioning activities alone, and have no substantial basis other than or in addition to petitioning activities. Duracraft Corp. v. Holmes Products Corp., 427 Mass. 156, 161 (1998). The court is required to allow such motion unless the nonmoving party shows by a preponderance of evidence that the petitioning activity is "devoid of any arguable basis in law" and the moving party's acts caused "actual injury to the responding party." M.G.L. c. 231 §59H. The court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

### IV.   ARGUMENT

**1. The Massachusetts Anti-SLAPP statute is a state procedural rule not applicable in federal court.**

This court has held that the Federal Rules of Civil Procedure supplant the state Anti-SLAPP procedures in a diversity action.[2] Stuborn Ltd. V. Bernstein, 245 F.Supp. 2d 312 (2003), see also Baker v. Coxe 940 F.Supp. 409, 417 (D.Mass. 1996). In Stuborn, the court found that the state Anti-SLAPP statute is strictly procedural and as such, rearranges the course of litigation as prescribed by the Federal Rules. Id. "For example, under the Federal Rules the plaintiff is the master of her complaint; thus, on motions to dismiss as well as motions for summary judgment, inferences are to be made and facts construed in her favor." Id. "Quite differently, the Anti-SLAPP statute shifts these presumptions and authorizes defendants in a SLAPP suit to file a special motion to dismiss in the infancy of a lawsuit." Id. Under the statute, the court is required to allow such motion unless the nonmoving party shows by a preponderance of evidence that the petitioning activity is "devoid of any arguable basis in law" and the moving party's acts caused "actual injury to the responding party." Fabre v. Walton, 436 Mass. 517, 520 (Mass. 2002). "Indeed the SJC itself has described the Anti-SLAPP statute as procedural." Stuborn Ltd. V. Bernstein, 245 F.Supp. 2d 312 (2003), citing Duracraft Corp. v. Holmes Products Corp., 427 Mass. 156, 161 (Mass. 1998) ("the act...provides a *procedural* remedy for early dismissal of the disfavored SLAPP suits") (emphasis added); Fabre v. Walton, 436 Mass. 517, 520 (2002) ("the protections afforded by G.L. c. 231 §59H, include a *procedural* remedy that permits the defendant in a SLAPP suit to file a "special motion") (emphasis added).

"In light of the competing procedures, I am persuaded that the Anti-SLAPP statute's special motion is predominantly procedural in nature, and that it directly conflicts with

---

[2] Defendant asserts that the Stuborn case should not apply here because this case is not a diversity action. In fact, the present case presents a federal question and is based on diversity (Plaintiff is a resident of

7

the Federal Rules of Civil Procedure." Id. Therefore, the Massachusetts Anti-SLAPP statute, a state procedural rule, cannot be enforced in federal court.

**2. A petition filed by a governmental entity is not protected by M.G.L. Ch. 231 §59H in that the literal language of §59H supports the interpretation that a petition filed by a governmental entity is beyond its scope.**

The Massachusetts anti-SLAPP statute "was enacted to protect citizens from lawsuits designed to chill their right to petition the government for redress of grievances." Duracraft Corp. v. Holmes Products Corp., 427 Mass. 156, 161 (1998). "The typical mischief that the legislation intended to remedy was lawsuits directed at individual citizens of modest means speaking publicly against development projects." Id. SLAPP suits are described as "generally meritless suits brought by large private interests to deter common citizens from exercising their political or legal rights or to punish them for doing so." Id., quoting Wilcox v. Superior Court, 27 Cal. App. 4th 809, 816-817 (1994), citing Pring, *SLAPPs: Strategic Lawsuits Against Public Participation*, 7 Pace Envtl. L. Rev. 3, 5-6, 9 (1989). "The objective of SLAPP suits is not to win them, but to use litigation to intimidate opponents' exercise of rights of petitioning and speech. Id.

A "right of petition" referred to in the Massachusetts anti-SLAPP statute, grants to a party against whom a claim is brought by reason of a party's exercise of its right of petition, the right to file a special motion to dismiss a claim because that right is protected by the First Amendment. Duracraft Corp. v. Holmes Products Corp., 427 Mass. 156 (1998). In no instance, however, has the statute been applied to the exercise of a right of petition by a governmental entity. Hayes v. Zaleznik, 2001 Mass. App. Div. 109. Moreover, the government has no right of petition under the Petitioning Clause of the First Amendment.

---

Rhode Island; Defendants' are a municipality in the Commonwealth of Massachusetts as well as residents).

8

> "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

U.S. Const., amend. I

> Pursuant to §59H, a party's exercise of its "right to petition" shall mean any written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding; any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive, or judicial body or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such consideration; or any other statement falling within constitutional protection of the right to petition government.

M.G.L. c. 231 § 59H

"All of the provisions in §59H should be construed together so as to constitute a harmonious whole consistent with the Legislative purpose." Hayes v. Zaleznik, 2001 Mass. App. Div. 107, 109, quoting In Re Sumpter, 46 Mass. App. Ct. 251, 254 (1999).

In issuing an application for a criminal complaint against the plaintiff, defendants exercised an authority backed up by the weight and force of government power. While it is not disputed that the defendants' investigation, report and application for a criminal complaint constitute a "petition to an executive or judicial body," the "petitions" were not made by a private, common citizen or group which the Massachusetts Anti-SLAPP statute seeks to protect. In their Motion, defendants reliance on Hashem v. Filene's, Inc., 2003 WL 22049513 (May 23, 2003) is misplaced. In Hashem, defendant's petitioning activities (reporting plaintiff's conduct to law enforcement officials) constituted "petitioning activities." This was so because these defendants were *private* entities, unlike defendants in the present case. Even considering Hashem, defendants'

9

"petitioning activities" would still fall outside the scope of §59H since their petitioning activities were on behalf of the government. It is quite absurd to suggest that plaintiff's challenge of defendants actions would resound such a chilling effect on the City of Attleboro and the Attleboro Police Department that all would be forever intimidated from issuing another criminal complaint or making an arrest for fear of being punished.

Therefore, defendants are not protected by M.G.L. c. 231§59H, the Massachusetts Anti-SLAPP statute because their "petitioning activities" were made on behalf of a governmental entity and as such, are beyond the scope of the statute." Hayes v. Zaleznik, 2001 Mass. App. Div. 107, 109, quoting In Re Sumpter, 46 Mass. App. Ct. 251, 254 (1999). Moreover, this result is just in that it prevents the creation of an absolute privilege in barring an action for malicious prosecution when law enforcement officials initiate criminal proceedings without probable cause. Id. at 111.

### 3. Plaintiff can demonstrate that Defendants' activities are wholly devoid of any reasonable factual support or any arguable basis in the law.

Notwithstanding defendants are not protected by §59H, plaintiff can demonstrate by a preponderance of the evidence, that the defendants petitioning activity is "devoid of any reasonable factual support or any arguable basis in law and that the defendants' acts caused him actual injury." Donovan v. Gardner, 50 Mass. App. Ct. 595, 599 (2000), quoting Duracraft Corp., supra, 427 Mass. at 165. See Baker v. Parsons, 434 Mass. 543, 544 & 551-52 (2001).

Defendants did not have probable cause to believe plaintiff was guilty of assault and battery at the time the application for complaint was filed. "Probable cause exists if 'the facts and circumstances within [a police officer's] knowledge and of which [the officer] had reasonable trustworthy information [are] sufficient in themselves to warrant [a

person] of reasonable caution' to believe that a crime has been committed or is being committed." Alexis v. MacDonald's Restaurants, 67 F.3d 341 (1st Cir. 1995), quoting Carroll v. United States, 267 U.S. 132, 162 (1925).

Prosecution for assault and battery requires proof of an intentional and *unjustified* use of force upon the person of another, however slight. M.G.L. c. 265, §13A (emphasis added). Under the common law, an actor is justified in using force against another to protect a third person when a reasonable person in the actor's position would believe his intervention was necessary for the protection of a third person and in circumstances as that reasonable person would believe them to be, a third person would be justified in using such force to protect himself. Comm. v. Martin 369 Mass. 640 (1976). Plaintiff was justified in breaking up the fight and restraining the boys. Student fights and other volatile situations carry physical and psychological consequences for both staff and students. Plaintiff, having received training in law enforcement and/or physical restraint techniques, exercised good judgment and acted appropriately when the boys refused to stop fighting. Moreover, the investigation by Officer Wellman did not reveal sufficient evidence of such an unlawful and *unjustified* touching by plaintiff. Officer Wellman failed to take into account the extent of which the boys were harming each another, that the fight was obviously against school rules and that some of the participants themselves may be criminally liable (surprisingly, there were no criminal proceedings initiated against any of the boys involved). In fact, Officer Wellman's investigation revealed an intense physical exchange between the boys.

"At this time Mr. Marshall had Mr. Campbell on the ground and in a head-lock. Mr. McDonnell then stated that he went to pull Mr. Marshall off when he was struck by Mr. Marshall with a fist leaving him with a black right eye."
(Exhibit C, APD report, page 2).

11

At the school nurse's office, Michael McDonnell II was complaining of pain in his right eye area. (Affidavit of Debra Maynard, Paragraph 3). Common sense would dictate that defendants would have a different reaction, particularly Officer McDonnell, who should have been grateful to Mr. Muir for preventing his son from getting hurt any further.

Officer Michael McDonnell had knowledge at the time the criminal proceedings were initiated against plaintiff that his son had a history of discipline problems. Furthermore, Officer McDonnell directly received the DOE Report which exonerated plaintiff on or about April 4, 2003, and failed to bring this exculpatory evidence forward prior to the May 5, 2003 hearing before the Magistrate in the Attleboro District Court. Defendants also had prior knowledge of the differences between a lawful and unlawful restraint.

In sum, plaintiff responded to a bona fide physical altercation and otherwise behaved reasonably under the circumstances. Defendants did not have probable cause to believe plaintiff used excessive force and was therefore guilty of assault and battery at the time the application for criminal complaint was filed. Plaintiff resigned from the Studley School in January 2003 because of the incident. Because of defendants' outrageous conduct, plaintiff suffered severe emotional distress and irreparable damage to his personal and professional reputation. Therefore, plaintiff can demonstrate that defendants' activities are wholly devoid of any reasonable factual support or any arguable basis in the law.

## V. CONCLUSION

In conclusion, defendant's Special Motion to Dismiss under the Anti-SLAPP statute should be dismissed because the defendants are seeking to invoke a state

procedural remedy not applicable in a federal court. Further, although the filing of an application for a complaint may be a petitioning activity, the government is not within the scope of the Anti-SLAPP statute and therefore not within the class of persons in which the statute seeks to protect. Moreover, plaintiff demonstrates that the defendant's activities are wholly devoid of any reasonable factual support or any arguable basis in law. For these reasons, plaintiff respectfully requests this Court to dismiss defendant's Special Motion to Dismiss.

        Respectfully submitted,
        ROBERT MUIR
        By his Attorneys

        Cristina Azzinaro, Esq.
        275 Martine Street, Suite 206
        Fall River, MA 02723
        Tel. (508) 837-6464
        BBO No. 653 953

        Brenda L. Panaggio, Esq.
        275 Martine Street, Suite 206
        Fall River, MA 02723
        Tel. (508) 679-2295
        BBO No. 754 602